2021 UT App 16

# THE UTAH COURT OF APPEALS

UDAK PROPERTIES LLC,
Appellee,
*v.*
CANYON CREEK COMMERCIAL CENTER LLC,
Appellant.

Amended Opinion[1]
No. 20190065-CA
Filed February 11, 2021

Fourth District Court, Provo Department
The Honorable Darold J. McDade
No. 160400059

Kenneth A. Okazaki and Bruce Wycoff,
Attorneys for Appellant

Greggory J. Savage and Gregory S. Roberts,
Attorneys for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

HAGEN, Judge:

¶1     This appeal stems from a disagreement as to the meaning of the term "Responsible Owner" as used in a restrictive covenant binding owners of parcels in a shopping center in Spanish Fork, Utah. Canyon Creek Commercial Center LLC appeals from the district court's grant of declaratory relief to UDAK Properties LLC, in which the court declared that UDAK is a Responsible Owner and entitled to exercise the privileges granted to such owners. Canyon Creek alleges that the

---

1. This amended opinion replaces the opinion issued December 10, 2020, *UDAK Properties v. Canyon Creek*, 2020 UT App 163.

Responsible Owner provision is ambiguous and that the ambiguity should have been construed in favor of Canyon Creek. Further, Canyon Creek alleges several errors in the court's award of attorney fees. It also argues that the court incorrectly determined that its tender of judgment to UDAK was legally insufficient and justified an award of additional attorney fees. We conclude that the Responsible Owner provision is unambiguous and dictates that UDAK is a Responsible Owner. We further conclude that the district court correctly awarded attorney fees to UDAK and that Canyon Creek's tender was invalid. Accordingly, we affirm.

BACKGROUND

¶2     In 1999, owners of parcels in a Spanish Fork, Utah shopping center recorded an amended declaration (Declaration) containing various restrictive covenants that run with the land. The Declaration designates certain property owners as "Responsible Owners" and defines that term, in relevant part, as follows:

> "Responsible Owner" shall mean the Owner of a Parcel or Parcels with a combined Building Area thereon of at least forty thousand square feet (40,000 sq. ft.) of Floor Area. Responsible Owner shall also mean the lessee of a Parcel with a Building constructed thereon containing a minimum of forty thousand square feet (40,000 sq. ft.) of Floor Area . . . .

The consent of all Responsible Owners is required before constructing or modifying buildings in the shopping center.

¶3     In 2005, UDAK acquired several parcels in the shopping center. Because UDAK believed it owned parcels with a

combined floor area of 42,945 square feet, UDAK held itself out as a Responsible Owner. In 2014, Canyon Creek acquired parcels in the shopping center. Canyon Creek disputed whether UDAK qualified as a Responsible Owner.

¶4     In February 2016, UDAK filed a declaratory relief action, seeking a declaration that "it is a Responsible Owner, and that it possesses all the rights provided to Responsible Owners in the Declaration." Canyon Creek and two co-defendants counterclaimed, seeking a declaration that UDAK was not a Responsible Owner. In Canyon Creek's view, UDAK's combined Building Area should be based on the buildings' actual floor area rather than their allowable floor area. The actual floor area of UDAK's buildings equaled only 35,808 square feet, and therefore Canyon Creek maintained that UDAK was not a Responsible Owner.[2] UDAK moved for summary judgment, but the district court denied that motion. The court concluded that because UDAK and Canyon Creek's "contrary arguments and contentions regarding the requirements for 'Responsible Owner' status . . . both appear reasonably supported by Declaration provisions," the Responsible Owner provision is "facially

---

2. UDAK owns five parcels in the shopping center, two of which have been developed into buildings that occupy less than the allowable Floor Area. Pad 1 "may be developed into not more than one (1) Building, which shall not exceed five thousand [square feet] (5,000 sq. ft.) in Floor Area," but the Site Plan shows a constructed or proposed building on Pad 1 of only 2,900 square feet. Similarly, Pad 5 "may be developed into not more than one (1) Building, which shall not exceed eight thousand square feet (8,000 sq. ft.) in Floor Area," but the Site Plan shows a proposed or constructed building of only 2,965 square feet. As a result, the actual buildings on UDAK's parcels have a combined Floor Area of 35,808 square feet.

ambiguous as a matter of law." The court set the matter for a bench trial.

¶5    On June 21, 2019, following the bench trial, the district court issued a written ruling concluding that UDAK is a "Responsible Owner" (Original Judgment). Specifically, the court found that "UDAK's parcels have a combined allowed Floor Area of at least 40,000 sq. ft." and that in "harmonizing all of the relevant terms of the 1999 Declaration, it is evident that UDAK is a Responsible Owner . . . as an Owner of Parcels with a combined allowed Floor Area in excess of 40,000 square feet."

¶6    The district court further ruled that UDAK was contractually entitled to its reasonable attorney fees pursuant to the Declaration's attorney fee provision. In the Original Judgment, the court ruled that Canyon Creek was liable for UDAK's reasonable attorney fees "pursuant to Article 10.04 of the 1999 Declaration" and directed UDAK to submit an affidavit establishing the amount of attorney fees. UDAK submitted an affidavit and a declaration outlining its attorney fees. Canyon Creek did not object within the time allowed by rule 73(d) of the Utah Rules of Civil Procedure. On November 1, 2018, the court awarded UDAK $251,498.65 in attorney fees (First Supplemental Judgment). Canyon Creek moved for entry of additional findings regarding the court's award of attorney fees, but the court denied the motion. Canyon Creek filed a timely notice of appeal.

¶7    In an apparent effort to satisfy the judgment while still preserving its right of appeal, Canyon Creek filed a document titled "Tender of Judgment Amount Plus Accrued Interest," to which it attached a photocopy of a check made out to UDAK in the amount of the total judgment. The actual check was never sent to UDAK. Shortly thereafter, Canyon Creek filed a document titled "Motion for Order

Abating Interest and Declaring Money Judgment Satisfied." After both parties had briefed whether Canyon Creek's tender was legally sufficient, the court entered an order concluding that Canyon Creek had not made a valid tender and granting UDAK additional attorney fees.

¶8      UDAK's counsel submitted an affidavit setting forth the additional attorney fees it had incurred in responding to both the motion for entry of additional findings and the motion related to the purported tender. This time Canyon Creek filed a timely objection. After further briefing, the court partially granted UDAK's requested additional attorney fees, awarding UDAK $27,979 in addition to the original award. On September 5, 2019, the court entered an amended judgment reflecting the additional attorney fees awarded in connection with the tender (Second Supplemental Judgment). Canyon Creek timely filed a supplemental notice of appeal.[3]

ISSUES AND STANDARDS OF REVIEW

¶9      Canyon Creek raises several arguments on appeal. First, Canyon Creek challenges the district court's interpretation of the Declaration. "Our review of a [district] court's interpretation of a contract begins with a question of law, reviewed for correctness: Is the contract unambiguous?" *West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1313 (Utah Ct. App. 1991). "If it is, its interpretation is itself a question of law." *Id.; see also Uintah Basin Med. Center v. Hardy*, 2005 UT App 92, ¶ 9, 110 P.3d 168 ("Questions of contract interpretation not requiring resort to

---

3. Spanish Fork, UT Realty LLC filed a separate appeal, which we also decide today. *See UDAK Props. LLC v. Spanish Fork, UT Realty LLC*, 2020 UT App 164. The other defendant/counterclaimant did not appeal.

extrinsic evidence are matters of law, which we review for correctness." (cleaned up)).[4]

¶10    Second, Canyon Creek argues that the district court made multiple reversible legal errors in awarding attorney fees to UDAK. "Whether attorney fees are recoverable in an action is a question of law, which we review for correctness." *Martin v. Kristensen*, 2019 UT App 127, ¶ 31, 450 P.3d 66 (cleaned up), *cert. granted*, 456 P.3d 386 (Utah 2019).

¶11    Third, Canyon Creek argues that its purported tender of the money judgment was legally sufficient and that there was no basis for an award of additional attorney fees to UDAK in connection with the tender. "We review a district court's interpretation of our rules of civil procedure, precedent, and common law for correctness." *Keystone Ins. Agency, LLC v. Inside Ins., LLC*, 2019 UT 20, ¶ 12, 445 P.3d 434 (cleaned up). Further, we review whether attorney fees are recoverable for correctness. *Supra* ¶ 10.

---

4. Canyon Creek makes two additional arguments on appeal relating to the interpretation of the Declaration. First, it argues that the district court committed reversible error by excluding a representative from Canyon Creek from testifying at trial regarding its understanding of the Declaration. Because we hold that the Declaration is unambiguous, it is unnecessary to resort to extrinsic evidence, making the exclusion of any testimony immaterial. Canyon Creek also argues that the district court erred in ruling, in the alternative, that UDAK was a Responsible Party as "a successor-in-interest to CDI," the prior owner of UDAK's parcels. Because we affirm the district court's conclusion that UDAK is a Responsible Owner by virtue of owning parcels "with a combined allowed Floor Area in excess of 40,000 square feet," we have no reason to reach this alternative ground for its ruling.

ANALYSIS

I. "Responsible Owner" Under the Declaration

¶12    The key question in this case is whether UDAK is a "Responsible Owner" under the Declaration. The district court ruled that the Declaration was ambiguous but concluded that UDAK was a Responsible Owner after considering extrinsic evidence. Although UDAK agrees with the court's ultimate conclusion, it contends that there was no need to resort to extrinsic evidence because the Declaration is unambiguous.[5] We agree with UDAK that there is only one reasonable interpretation of the Declaration and that UDAK unambiguously qualifies as a Responsible Owner.

¶13    We reach this conclusion despite the district court's contrary view that the Declaration was ambiguous. Whether a contract is ambiguous is a question of law and we afford no deference to the district court's conclusion. *See Mid-America Pipeline Co. v. Four-Four Inc.*, 2009 UT 43, ¶ 16, 216 P.3d 352. The district court is "in no better position than is this court to interpret the contractual language at issue here." *Level 3*

---

5. Citing *Christensen v. Christensen*, 2017 UT App 120, 400 P.3d 1219, Canyon Creek incorrectly asserts that UDAK "must cross-appeal or cross-petition if they wish to attack a judgment of a lower court for the purpose of enlarging their own rights or lessening the rights of their opponent," *id.* ¶ 3 n.2, or should have petitioned for interlocutory appeal. To the contrary, "if appellees or respondents merely desire the affirmance of the lower court's judgment, they need not, and should not, cross-appeal or cross-petition." *State v. South*, 924 P.2d 354, 356 (Utah 1996). Therefore, it was neither necessary nor appropriate for UDAK to appeal from the district court's ultimate decision in its favor.

*Commc'ns, LLC v. Public Service Comm'n.*, 2007 UT App 127, ¶ 11, 163 P.3d 652; *see also Lake v. Hermes Assocs.*, 552 P.2d 126, 128 (Utah 1976) ("[W]here the resolution of the controversy depends upon the meaning to be given documents, the [district] court is in no more favored position and is no better able to determine the meaning of such documents than this court."). Further, "it is within our discretion to affirm a judgment on an alternative ground if it is apparent in the record." *Olguin v. Anderton*, 2019 UT 73, ¶ 20, 456 P.3d 760 (cleaned up). Because we can determine, based on the Declaration itself, that there is no ambiguity as to whether UDAK qualifies as a Responsible Owner, we affirm on that basis.

¶14    "Restrictive covenants that run with the land and encumber subdivision lots form a contract between subdivision property owners as a whole and individual lot owners . . . ." *Swenson v. Erickson*, 2000 UT 16, ¶ 11, 998 P.2d 807 (cleaned up). As such, "interpretation of the [Declaration] is governed by the same rules of construction as those used to interpret contracts." *See id*. The first step in contract interpretation is to look within the four corners of the agreement. *See Wittingham LLC v. TNE Ltd. P'ship*, 2020 UT 49, ¶ 71, 469 P.3d 1035. "Provided that the language within the four corners of the agreement is unambiguous, we look no further than the plain meaning of the contractual language." *Mid-America Pipeline*, 2009 UT 43, ¶ 19.

¶15    A court will look to extrinsic evidence only if the contract is ambiguous. *Id*. A contract is ambiguous if "it is capable of more than one *reasonable* interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Brady v. Park*, 2019 UT 16, ¶ 54, 445 P.3d 395 (cleaned up). "Under our caselaw a reasonable interpretation is an interpretation that cannot be ruled out, after considering the natural meaning of the words in the contract provision in context of the contract as a whole, as one [of] the parties could

have reasonably intended." *Id.* ¶ 55. We evaluate "the instrument in its entirety, considering each contract provision in relation to all of the others, with a view toward giving effect to all and ignoring none." *Ocean 18 LLC v. Overage Refund Specialists LLC (In re Excess Proceeds from Foreclosure of 1107 Snowberry St.),* 2020 UT App 54, ¶ 21, 474 P.3d 481 (cleaned up); *see also Gillmor v. Macey,* 2005 UT App 351, ¶ 19, 121 P.3d 57 ("We examine the entire contract and all of its parts in relation to each other and give a reasonable construction of the contract as a whole to determine the parties' intent." (cleaned up)).

¶16 The Declaration defines Responsible Owner as "the Owner of a Parcel or Parcels with a combined Building Area thereon of at least forty thousand square feet (40,000 sq. ft.) of Floor Area." UDAK contends that it qualifies as a Responsible Owner because it owns five parcels that may be developed into buildings not to exceed a combined 42,945 square feet of Floor Area. Canyon Creek, on the other hand, argues that this provision refers not to the maximum allowable Floor Area but to the actual Floor Area of the existing or proposed buildings constructed on each parcel. If Canyon Creek's interpretation is correct, the combined Building Area of UDAK's parcels would be insufficient for it to qualify as a Responsible Owner.

¶17 The Declaration defines "Building Areas" as "the area or areas designated and set forth within each separate Parcel on the Site Plan, . . . which shall be established as Building Areas pursuant to Article 3.03." The Site Plan shows the location of each parcel and lists the square footage of all existing or proposed buildings. Under Canyon Creek's interpretation, the building measurements shown on the Site Plan establish each parcel's Building Area for purposes of the Responsible Owner provision.

¶18 But Canyon Creek's interpretation would treat Building Area as synonymous with Building, a separately defined term.

"When interpreting a contract we attempt to give effect to each provision, and we look for a reading that harmonizes the provisions and avoids rendering any provision meaningless." *McNeil Eng'g & Land Surveying, LLC v. Bennett*, 2011 UT App 423, ¶ 17, 268 P.3d 854 (cleaned up). "An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless, or inexplicable." 11 *Williston on Contracts* § 32:5 (4th ed. 2020). The Declaration defines "Building" as "the structure or structures to be constructed within the Building Areas." To give effect to all terms in the Declaration, the Floor Area of the Building Area must mean something different from the Floor Area of the Building to be constructed within it.[6]

¶19    Significantly, the Responsible Owner provision itself distinguishes between the Floor Area of a Building Area and the Floor Area of "a Building constructed thereon." In addition to "the Owner of a Parcel or Parcels with a combined Building Area thereon of at least forty thousand square feet (40,000 sq. ft.) of Floor Area," the definition of Responsible Owner includes "the lessee of a Parcel *with a Building constructed thereon* containing a minimum of forty thousand square feet (40,000 sq. ft.) of Floor Area." (Emphasis added.) The Declaration thus draws a distinction between owners and lessees and the Floor Area required for each to be a Responsible Owner. If UDAK was a lessee, it would not be a Responsible Owner because the

---

6. Under Canyon Creek's interpretation, UDAK would qualify as a Responsible Owner so long as its parcels were undeveloped, but it would lose that status once it developed those parcels into buildings smaller than the maximum size allowed. Such an interpretation would treat the owners of undeveloped parcels more favorably than the owners of developed parcels, despite the latter's more substantial investment in the shopping center.

Buildings constructed on its parcels do not contain a combined Floor Area of at least 40,000 square feet. But, since UDAK is an owner, the Floor Area required is not limited to that of "a Building constructed thereon." Canyon Creek's alternative interpretation, which would limit UDAK's Floor Area to the square footage of the Buildings constructed on each parcel, cannot be reconciled with the plain language in the Responsible Owner provision.

¶20    The Declaration's other provisions similarly distinguish between the size of Buildings and the size of the Building Area. The Declaration contemplates that "[t]he Building Area of each Parcel may, but need not be developed to the full gross square footage of Floor Area as set forth" in the Site Plan or as allowed in other sections of the Declaration. Section 4.07 provides that each parcel "may be developed into not more than one (1) Building, which shall not exceed" a fixed square footage "of Floor Area." Section 3.03 references the same fixed square footage for each parcel and provides that, for purposes of assigning parking spaces, "Floor Area includes the maximum" square footage "allowed for the Building located or to be located on" a particular parcel, "although the Buildings currently located thereon have not been constructed to that size as of the date of this Declaration." Thus, the treatment each parcel receives is based on the maximum square footage of Floor Area allowed without regard to the actual square footage of Buildings.

¶21    The Declaration unambiguously sets forth the maximum square footage of Floor Area for each parcel and distinguishes that Building Area from the Floor Area of "a Building constructed thereon." Based on the fixed square footage listed in sections 3.03 and 4.07, UDAK owns parcels with a combined Building Area of 42,945 square feet of Floor Area. Accordingly, UDAK is a Responsible Owner and possesses all rights and privileges granted to Responsible Owners under the Declaration.

II. Attorney Fees

¶22   Canyon Creek argues that the district court erred in several respects when awarding attorney fees in the underlying action. As an initial matter, there is no dispute that UDAK was the prevailing party in this lawsuit and thus entitled to fees under the Declaration. Instead, the parties dispute which fees were authorized by the Declaration's attorney fees provision.

¶23   In Utah, "attorney fees are awarded in accordance with the terms of [the] contract." *Rapoport v. Four Lakes Village Homeowners Ass'n Inc.*, 2013 UT App 78, ¶ 22, 300 P.3d 327 (cleaned up). Article 10.04 of the Declaration states,

> In the event that any suit is brought for the enforcement of any provision of this Declaration or as the result of any alleged breach thereof or for a declaration of rights and duties hereunder, the successful party or parties to such suit shall be entitled to collect reasonable attorneys' fees from the losing party or parties and any judgment or decree rendered shall include an award thereof.

On appeal, Canyon Creek argues that the court made seven errors by awarding attorney fees for (1) pre-litigation work; (2) work related to administrative activities, mediation, and other settlement efforts; (3) undescribed legal work; (4) work done by a second attorney before entering an appearance; (5) settlement efforts made by UDAK's successor counsel; (6) work done before November 29, 2018; and (7) work done after November 29, 2018, when fees were awarded during the pendency of this appeal.

¶24   Each of Canyon Creek's first five arguments relates to the district court's award of attorney fees in the First Supplemental Judgment issued on November 1, 2018. Although Canyon Creek attempted to raise those issues below, it failed to do so in a

timely manner. In the First Supplemental Judgment, the district court did not address the merits of those issues but instead ruled that Canyon Creek "did not file an objection within seven (7) days as required by Utah R. Civ. P. 73(d)" in response to UDAK's affidavit and declaration of fees. On appeal, Canyon Creek does not acknowledge the court's ruling or attempt to demonstrate that the court erred by not addressing its objection on the merits. To carry its burden of persuasion on appeal, "an appellant must address and show error in the basis for the district court's decision." *Scott Anderson Trucking Inc. v. Nielson Constr.*, 2020 UT App 43, ¶ 32, 462 P.3d 822. Because Canyon Creek has not addressed the actual basis for the district court's ruling, it cannot establish error with respect to the First Supplemental Judgment.

¶25 We turn to Canyon Creek's sixth and seventh attorney-fees arguments, both of which relate to the district court's Second Supplemental Judgment issued on September 5, 2019. First, Canyon Creek argues that "UDAK's request for additional attorney fees incurred before November 29, 2018 is time-barred" under the Utah Rules of Civil Procedure because rule 73(a) requires a party to claim attorney fees "no later than 14 days after the judgment is entered," Utah R. Civ. P. 73(a), and rule 59(e) requires a party to file a motion to alter or amend a judgment "no later than 28 days after entry of the judgment," *id.* R. 59(e). According to Canyon Creek, if UDAK incurred additional attorney fees, it should have requested such fees within the time periods prescribed by rules 73(a) and 59(e), following the entry of the First Supplemental Judgment on November 1, 2018.

¶26 The time limits in rules 73(a) and 59(e) do not apply in this case because the fees awarded in the Second Supplemental Judgment were incurred in responding to motions filed after the First Supplemental Judgment was entered. The court ruled that UDAK was entitled to fees for work done in connection with

Canyon Creek's tender of judgment and corresponding motion, which were filed on November 7, 2018, and December 7, 2018, respectively.[7] The timeframes in rules 73(a) and 59(e) were not triggered by the entry of the First Supplemental Judgment on November 1, 2018, because the fees awarded in the Second Supplemental Judgment were unrelated to and incurred after the First Supplemental Judgment was entered. On appeal, Canyon Creek has not attempted to show that the attorney fees awarded in the Second Supplemental Judgment are unrelated to Canyon Creek's attempted tender and corresponding motion. Therefore, the court's additional award of $27,979 in attorney fees was proper.

¶27 Canyon Creek also argues that the district court lacked jurisdiction to award attorney fees because the Second Supplemental Judgment was entered during the pendency of this appeal. Specifically, Canyon Creek alleges that "[i]t simply does not make sense that a litigant such as UDAK can submit, and a district court can enter, a judgment of attorney fees anytime during the pendency of an appeal, including after the filing of an initial brief."

¶28 This court has previously rejected that argument. In *Saunders v. Sharp*, 818 P.2d 574 (Utah Ct. App. 1991), we held that "even where a [district] court is otherwise divested of jurisdiction due to an appeal, the [district] court retains the power to act on collateral matters." *Id.* at 578. Further, we held that the district court has jurisdiction to award supplemental

---

7. In contrast, the court specifically denied fees for any work done on Canyon Creek's motion for entry of additional findings because it found that UDAK did not file a timely motion requesting such fees. Accordingly, although UDAK requested $32,123 in additional fees, the court awarded UDAK only $27,979.

attorney fees arising from such collateral matters. *Id.* Under *Saunders*, the district court had jurisdiction to award additional attorney fees in connection with the purported tender.

¶29   Canyon Creek asserts, without explanation, that rules 73(a) and 59(e) abrogate *Saunders*. However, Canyon Creek does not explain why the timeframes for seeking attorney fees in connection with a final judgment, *see* Utah R. Civ. P. 73(a), or moving to amend that judgment, *see id.* R. 59(e), would apply to an award of supplemental attorney fees incurred in litigating post-judgment collateral matters. "And although we have the power to overrule our earlier cases, doing so requires us to distinguish between weighty precedents and less weighty ones by analyzing (1) the persuasiveness of the authority and reasoning on which the precedent was originally based, and (2) how firmly the precedent has become established in the law since it was handed down." *State v. Sorbonne*, 2020 UT App 48, ¶ 29, 462 P.3d 409, *cert. granted*, 474 P.3d 946 (Utah 2020). Canyon Creek has not engaged in this analysis to convince us to overrule *Saunders.* Therefore, we affirm the district court's supplemental attorney fees award.[8]

---

8. Canyon Creek makes two additional arguments "irrespective of this *Saunders* issue" as to why the Second Supplemental Judgment was improper. First, Canyon Creek argues that the district court erroneously awarded fees in the absence of a motion. But UDAK specifically requested attorney fees in its opposition to Canyon Creek's purported tender and related motion to abate interest and declare money judgment satisfied. Second, Canyon Creek argues that these additional fees were not authorized by section 10.04 of the Declaration, an argument we reject in the next part of our analysis. *See infra* ¶ 36.

## III. Tender

¶30  Canyon Creek challenges the district court's conclusion that its purported tender of the money judgment was invalid and argues that the award of attorney fees to UDAK for work done in connection with the tender and corresponding motion was improper. Canyon Creek argues that its tender was legally sufficient under Utah Code section 78B-5-802, which states that "an offer in writing to pay a particular sum of money . . . is, if not accepted, equivalent to the actual production and tender of the money." Utah Code Ann. § 78B-5-802 (LexisNexis 2017).

¶31  "Utah courts have interpreted this provision to mean a valid tender requires an obligor to make a bona fide, unconditional, offer of payment of the amount of money due coupled with an *actual production* of the money or its equivalent." *Shields v. Harris*, 934 P.2d 653, 655 (Utah Ct. App. 1997) (emphasis added) (cleaned up); *see also Utah Res. Int'l. Inc. v. Mark Techs. Corp.*, 2014 UT 60, ¶ 34, 342 P.3d 779 ("Valid tender must be (1) timely, (2) made to the person entitled to payment, (3) unconditional, (4) an offer to pay the amount of money due, and (5) coupled with an actual production of the money or its equivalent." (cleaned up)). "A mere offer to pay generally does not constitute a valid tender." *PDQ Lube Center, Inc. v. Huber*, 949 P.2d 792, 800 (Utah Ct. App. 1997); *see also Washington Nat'l Ins. Co. v. Sherwood Assocs.*, 795 P.2d 665, 670 (Utah Ct. App. 1990) ("Informing an obligee that you are ready and willing to perform . . . is insufficient."). Our supreme court has noted an exception to the rule: "A party may be excused from extending actual payment of a judgment if it is obvious that the other party would reject it." *Utah Res. Int'l*, 2014 UT 60, ¶ 35. However, "there must be evidence that the debtor would actually make payment but for the creditor's refusal to accept it." *Id.*

¶32  The district court found that Canyon Creek "never produced or delivered to [UDAK] the attorney fees or its

equivalent." Further, Canyon Creek is not excused from extending actual payment, as there is no evidence that UDAK "would reject it." *Id.* To the contrary, UDAK responded to the purported tender by stating that, in its view, the tender did "not meet all of the requirements to be a valid tender," but that UDAK was "willing to accept a valid tender meeting each of the foregoing requirements if [Canyon Creek] wish[es] to make such a tender."

¶33 Canyon Creek argues that filing a photocopy of a check is "actual production" of the money or its equivalent. Canyon Creek cites section 78B-5-802 and the 1894 case *Hyams v. Bamberger*, 36 P. 202 (Utah 1894), which Canyon Creek claims excuses actual production of money when a person makes an offer of tender in writing. However, we are bound to follow subsequent Utah Supreme Court decisions holding that a valid tender requires *both* "an offer to pay the amount of money due" *and* "actual production of the money or its equivalent." *See Utah Res. Int'l*, 2014 UT 60, ¶ 34; *accord Zion's Props., Inc. v. Holt*, 538 P.2d 1319, 1322 (Utah 1975); *see also Ortega v. Ridgewood Estates LLC*, 2016 UT App 131, ¶ 30, 379 P.3d 18 ("We are bound by vertical stare decisis to follow strictly the decisions rendered by the Utah Supreme Court." (cleaned up)). Any argument that those opinions conflict with the language of the statute must be directed to the Utah Supreme Court. Based on controlling precedent, we agree with the district court that Canyon Creek did not make a valid tender.

¶34 We also conclude that the district court's award of attorney fees in connection with Canyon Creek's invalid tender was proper. As an initial matter, we disagree with both parties that the district court awarded these fees pursuant to Utah Code section 78B-5-825, which requires an award of reasonable attorney fees "if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." *See* Utah Code Ann. § 78B-5-825. Although the

district court concluded that Canyon Creek's tender and corresponding motion was "meritless" and "lack[ed] a good faith basis," the court did not cite section 78B-5-825 as the basis for awarding attorney fees.

¶35 Instead, attorney fees were authorized by section 10.04 of the Declaration. Fees incurred in connection with litigating the validity of Canyon Creek's purported tender are closely related to the underlying lawsuit brought by UDAK "for a declaration of rights and duties" under the Declaration. As the successful party, UDAK was entitled to an award of these fees under section 10.04.

## IV. Attorney Fees on Appeal

¶36 UDAK requests an award of its attorney fees incurred in defending this appeal. "A party entitled by contract or statute to attorney fees below and that prevails on appeal is entitled to fees reasonably incurred on appeal." *Federated Cap. Corp. v. Abraham*, 2018 UT App 117, ¶ 15, 428 P.3d 21 (cleaned up). Because the district court awarded UDAK attorney fees below pursuant to the Declaration, UDAK is entitled to fees as the prevailing party on appeal.

## CONCLUSION

¶37 We conclude that the Declaration is unambiguous that UDAK is a Responsible Owner. We affirm the amount of attorney fees awarded in the First Supplemental Judgment because Canyon Creek failed to preserve the challenges related to that judgment. We also affirm the attorney fees awarded in the Second Supplemental Judgment as well as the court's conclusion that Canyon Creek's tender of judgment was invalid. We therefore remand to the district court only to award the attorney fees UDAK reasonably incurred on appeal.

---